# EXHIBIT 3

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

February 14 2020 1:30 PM

KEVIN STOCK
COUNTY CLERK
NO: 20-2-04951-0

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR PIERCE COUNTY

| | |
|---|---|
| SERVPRO OF TACOMA, LLC d/b/a MITIGATION MASTERS, LLC, a Washington limited liability company, | CASE NO.: |
| Plaintiff, | COMPLAINT FOR BREACH OF CONTRACT AND LIEN FORECLOSURE |
| v. | |
| YORK ENTERPRISES, LLC, a Washington limited liability company; and MAXINE McCALLUM, an individual and MONIKA VONLINTEL, an individual. | |
| Defendants. | |

## INTRODUCTION

Plaintiff Servpro of Tacoma, LLC d/b/a Mitigation Masters, LLC ("Mitigation Masters"), by and through its undersigned attorneys, brings this action for breach of contract against Defendant York Enterprises, LLC, a Washington limited liability company ("York"), for York's material breach of the parties' services contract entered on May 30, 2019 for water remediation and restoration services at a private residence owned by Defendants Maxine McCallum and Monika Vonlintel. Mitigation Masters fully performed under the contract with York and York accepted all of Mitigation Masters's services rendered under the contract.

Exhibit 3

However, York has failed to pay Mitigation Masters for its services in material breach of the parties' contract.

Mitigation Masters further seeks foreclosure of a mechanics lien it recorded on the McCallum residence as a result of York's failure to pay Mitigation Masters for the services it rendered at the McCallum residence. In support of its Complaint for Breach of Contract and Lien Foreclosure, Mitigation Masters alleges the following:

## I.  PARTIES

1.1     Plaintiff, Servpro of Tacoma, LLC is a Washington limited liability company with its principal place of business located in Pierce County, Washington.

1.2     Defendant, York Enterprises, LLC ("York") is a Washington limited liability company with its principle place of business located in Pierce County, Washington.

1.3     Defendant Maxine McCallum ("McCallum") is an individual who resides in Pierce County, Washington.

1.4     Defendant Monika VonLintel ("VonLintel") is an individual who, upon information and belief, resides in Pierce County, Washington.

1.5     Defendants McCallum and VonLintel are the owners of real property located at 521 N. Yakima, Tacoma, WA, 98403, Pierce County Assessor's Tax Parcel #2035150010, legally described as follows:

        SECTION 32 TOWNSHIP 21 RANGE 03 QUARTER 24 NEW TACOMA L 1 THRU 6 B 3515 INC PART ALLEY VAC BLOCK 2 LOT 1.

For purposes of this Complaint this property will hereinafter be referred to as the "McCallum Residence."

## II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over the parties and subject matter of this Complaint for Breach of Contract and for Lien Foreclosure pursuant to RCW 2.08.010 and RCW 60.04.171.

Exhibit 3

2.2      Venue is proper in this Court pursuant to RCW 4.12.010 and .020 because the contractual relationship between Mitigation Masters and York and the breach thereof arose in Pierce County, and the McCallum Residence and mechanics lien on the McCallum Residence are in Pierce County.

## III.  FACTS

**Breach of Contract**

3.1      The McCallum Residence is a historical 1913 brick mansion that was originally built for one of Tacoma's early prominent businessmen, William Rust. The McCallum Residence includes, among other features, a movie theater, a detached carriage house, and a 1000 plus square foot historical basement ballroom. The ballroom had been maintained in its original condition, including its original silk wall coverings, elevated bandstand, tin ceiling and knob-and-tube electrical wiring.

3.2      In or about September of 2018, McCallum hired York as a general contractor to complete certain renovations and remodeling work on the McCallum Residence.

3.3      On or about May 29, 2019, while York was working on the McCallum Residence as a general contractor, the City of Tacoma turned off the water in the area of the McCallum Residence. Although York was aware that the water had been turned off, it continued its work on the McCallum Residence. Among its other work that day, York's crew worked in a bathroom on the residence's second floor doing painting-related tasks. While completing this work, a York employee covered the bathtub with a water-resistant or waterproof drop cloth. Prior to leaving work that day, a York employee accidentally left the bathtub water faucet in the "on" position.

3.4      On information and belief, later in the evening of May 29, the City of Tacoma restored water service to the McCallum Residence and the surrounding neighborhood. When the water service was restored, the water poured onto the bathroom floor and spread throughout

Exhibit 3

portions of the McCallum Residence. As a result, the McCallum Residence sustained significant water-related damage and required substantial water remediation services.

      3.5     On May 30, 2019, York entered into a contract with Mitigation Masters pursuant to which Mitigation Masters agreed to perform substantial water remediation and restoration services for York at the McCallum Residence. Attached as Exhibit A hereto is a true and correct copy of the agreement entered into between Mitigation Masters and York, dated May 30, 2019 (hereinafter "the Agreement").

      3.6     Although the Agreement discusses the ability of York to pass through insurance payments to Mitigation Masters for Mitigation Masters's services, the Agreement also expressly states that York is responsible for all costs not timely covered by insurance:

> It is fully understood that Customer [York] and its agents, successors, assigns and heirs are personally responsible for any and all deductibles and any costs not covered by insurance. Interest and finance charges will be charged at the maximum allowable by law, or 1.5% per month, whichever is less, on accounts over thirty (30) days past due. Time is of the essence.

Ex. A at p. 3.  York also agreed "to purchase, receive, and pay for the Services pursuant to the terms and conditions of this Contract." Ex. A at p. 4, ¶ 1.

      3.7     The Agreement provides for attorneys' fees if Mitigation Masters was forced to pursue legal action against York for monies due under the Agreement:

> Should Provider [Mitigation Masters] bring legal action to collect monies due under the Contract or should the matter be turned over for collection, Provider shall be entitled, to the fullest extent permitted under law, to reasonable legal fees and costs of any such collection attempt, in addition to any other amounts owed by Client. . . .

Ex. A at p. 4, ¶ 5.

      3.8     The Agreement further provides that any disputes by York regarding Mitigation Masters's service must be asserted within sixty (60) days after completion of service:

> Any claim by Client [York] for faulty performance, for nonperformance or breach under this Contract for damages shall be made in writing to Provider

Exhibit 3

[Mitigation Masters] within sixty days completion of services. Failure to make such a written claim for any matter which could have been corrected by Provider shall be deemed a waiver by Client. . . . .

Exhibit A at p. 4, ¶ 7.

3.9     Pursuant to the Agreement, Mitigation Masters provided substantial water remediation and restoration services at the McCallum Residence between May 26, 2019 and July 13, 2019, including labor, materials and equipment.

3.10    York did not dispute any of the services provided by Mitigation Masters.

3.11    On August 2, 2019, Mitigation Masters sent an invoice to York for all its services rendered at the McCallum Residence totaling $104,034.10. Attached as Exhibit B is a true and correct copy of Mitigation Masters's invoice to York (inadvertently and incorrectly dated 4/22/2019).

3.12    York did not dispute the amount of the invoice.

3.13    York represented to Mitigation Masters that its insurance provider would pay the Mitigation Masters invoice. However, Mitigation Masters received no payment from either York or from its insurance provider.

3.14    After repeated requests for payment, York paid Mitigation Masters a partial payment of $25,000.

3.15    Despite repeated requests for full payment, York made no further payments to Mitigation Masters, leaving an outstanding amount owed of $79,034.01.

3.16    At no point has York ever disputed the services provided by Mitigation Masters under the parties' Agreement or the amounts owed for those services as reflected in Serv Pro's invoice to York. York has simply failed to pay the amount it owes to Mitigation Masters.

**Mechanics Lien**

3.17    Because of York's failure to pay Mitigation Masters for its services at the McCallum Residence, Mitigation Masters timely recorded a Claim of Lien on the McCallum

Exhibit 3

Residence in the Pierce County Recorder's Office under recording number 201910010778 on October 1, 2019.

      3.18    On October 7, 2019, Mitigation Masters properly served York with the Claim of Lien by certified mail at York's offices located at 3517 S. 13th St., Tacoma, Washington.

      3.19    There is presently due and owing to Mitigation Masters from York $79,034.01 for labor, materials and equipment for services rendered by Mitigation Masters to the McCallum Residence, plus contractual monthly late fees at the rate of 1.5% per month.

## IV.    CAUSES OF ACTION

**A.    First Cause of Action: Breach of Contract Against Defendant York.**

      4.1    Mitigation Masters re-alleges and incorporates by reference paragraphs 1.1 through 3.19 above, as though fully set forth herein.

      4.2    Mitigation Masters and York entered into an Agreement pursuant to which the parties agreed that Mitigation Masters would provide water remediation and restoration services to the McCallum Residence in exchange for York's payment for those services. Mitigation Masters fully performed under the Agreement and timely provided the agreed water remediation and restoration services at the McCallum Residence, including labor, materials and equipment.

      4.3    York has breached the parties' Agreement by failing to pay Mitigation Masters the balance owing for Mitigation Masters's services provided under the parties' Agreement, in the amount of $79,034.01.

      4.4    As a result of York's breach and failure to pay Mitigation Masters, Mitigation Masters has been damaged and is entitled to its damages in the amount of $79,034.01 plus contractual late fees and attorneys' fees.

Exhibit 3

**B.**     **Second Cause of Action: Foreclosure of Lien Against Subject Property.**

4.5     Mitigation Masters re-alleges and incorporates by reference paragraphs 1.1 through 4.4, above, as though fully set forth herein.

4.6     Mitigation Masters has complied with all conditions precedent to bringing and maintaining a foreclosure action under RCW 60.04.011 *et seq.* and is entitled to an order of foreclosure and sale of the McCallum Residence that is the subject of this action, with the net proceed of the sale applied to amounts due and owing to Mitigation Masters for the water remediation services it performed at the McCallum Residence.

## V.     RESERVATION OF RIGHTS

5.1     Mitigation Masters reserves the right to add additional parties to this lawsuit as well as make further claims and/or amend claims set forth herein as may be warranted by discovery.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Mitigation Masters prays for relief as follows:

6.1     For judgment against York in an amount to be proven at trial, but at least $79,034.01 plus prejudgment interest, costs, contractual late fees and attorney's fees.

6.2     In the event of non-payment of the Judgment against York upon its entry, a decree of foreclosure of Mitigation Masters's Claim of Lien against the McCallum Residence in the amount of the Judgment and a judicially ordered sale of the Subject Property, with the proceeds used to satisfy Mitigation Masters's lien claim, together with interest, attorney's fees, contractual late fees, and taxable costs incurred herein and consistent with RCW Title 60.04.

6.3     Adjudication of the priority of Mitigation Masters's lien vis-à-vis the interests of other claimants in the McCallum Residence.

//

Exhibit 3

6.4   For such other and further relief as the Court deems just and equitable.

DATED this 14th day of February 2020.

**ARETE LAW GROUP PLLC**


By: _/s/ Jonah O. Harrison_
      Jonah O. Harrison, WSBA #34576
      1218 Third Avenue, Suite 2100
      Seattle, WA 98101
      Telephone: (206) 428-2350
      Facsimile: (206) 428-3250
      jharrison@aretelaw.com

      Attorneys for Plaintiff

Exhibit 3

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

March 25 2020 10:32 AM

KEVIN STOCK
COUNTY CLERK
NO: 20-2-04951-0

1

2

3

4

5

6

7

8

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

9

10

SERVPRO OF TACOMA, LLC d/b/a
MITIGATION MASTERS, LLC, a Washington
limited liability company,

No. 20-2-04951-0

EXHIBITS TO COMPLAINT

11

Plaintiff,

12

v.

13

14

15

YORK ENTERPRISES, LLC, a Washington
limited liability company; and MAXINE
McCALLUM, an individual and MONIKA
VONLINTEL, an individual.

16

17

Defendants.

18

19

20

21

22

23

24

25

26

EXHIBITS TO COMPLAINT - 1



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Exhibit 3

1

DATED this 25th day of March, 2020.

2

3                                **ARETE LAW GROUP PLLC**
                                 By: _/s/ Jonah O. Harrison_
4                                     Jonah O. Harrison, WSBA #34576
                                      1218 Third Avenue, Suite 2100
5                                     Seattle, WA 98101
                                      Telephone: (206) 428-2350
6                                     Facsimile: (206) 428-3250
                                      jharrison@aretelaw.com
7

8                                     Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBITS TO COMPLAINT - 2



Exhibit 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Annabel Barnes hereby certify that on March 25, 2020 I caused copies of the foregoing document to be served on the following persons in the manner indicated below at the following address:

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS | |
|---|---|---|
| *Attorneys for Maxine McCallum and Monika Von Lintel*<br><br>Karl Neumann, WSBA No. 48708<br>COZEN O'CONNOR<br>999 Third Avenue, Suite 1900<br>Seattle, Washington 98104<br>Phone: (206) 340-1000<br>kneumann@cozen.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☒ E-mail<br>☐ U.S. Mail | |
| *Attorneys for Defendant York Enterprises, LLC*<br><br>Betsy A. Gillaspy, WSBA No. 21340<br>GILLASPY & RHODE, PLLC<br>821 Kirkland Avenue, Suite 200<br>Kirkland, Washington 98033-6311<br>Phone: (425) 646-2956<br>bgillaspy@gillaspyrhode.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☒ E-mail<br>☐ U.S. Mail | |
| *Attorneys for Defendant York Enterprises, LLC*<br><br>Kelly DeLatt-Mahr, WSBA No. 26201<br>SMITH \| ALLING<br>1501 Dock Street<br>Tacoma, WA 98402<br>Phone: (253) 627-1091<br>kelly@smithalling.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☒ E-mail<br>☐ U.S. Mail | |

EXHIBITS TO COMPLAINT - 3



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Exhibit 3

# EXHIBIT A

Exhibit 3



Of Tacoma

**Notice to Customer**

This contractor is registered with the State of Washington under registration no. MITIGML867RR, and has posted with the state a bond or deposit of $12,000. For the purpose of satisfying claims against the contractor for breach of contract including negligent or improper work in the conduct of the contractor's business. The expiration date of this contractor registration is 12/21/2020.

THIS BOND OR DEPOSIT MIGHT NOT BE SUFFICIENT TO COVER A CLAIM THAT MIGHT ARISE FROM THE WORK DONE UNDER YOUR CONTRACT.

This bond or deposit is not for your exclusive use because it covers all work performed by this contractor. The bond or deposit is intended to pay valid claims up to $12,000 that you and other customers, suppliers, subcontractors, or taxing authorities may have.

FOR GREAT PROTECTION YOU MAY WITHHOLD A PERCENTAGE OF YOUR CONTRACT.

You may withhold a contractually defined percentage of your construction contract as a retainage for a stated period of time to provide protection to you and help insure that your project will be completed as required by your contract.

YOUR PROPERTY MAY BE LIENED.

If a supplier of materials used in your construction project or an employee or subcontractor of your contractor or subcontractors is not paid, your property may be liened to force payment and you could pay twice for the same work.

FOR ADDITIONAL PROTECTION, YOU MAY REQUEST THE CONTRACTOR TO PROVIDE YOU WITH ORIGINAL "LIEN RELEASE" DOCUMENTS FROM EACH SUPPLIER OR SUBCONTRACTOR ON YOUR PROJECT.

The contract is required to provide you with further information about lien release documents if you request it. General information is also available from the state Department of Labor and Industries.

*This notice is sent in compliance with the laws of the State of Washington, RCW 18.27.114*

_____       5/30/19
Provider Signature                               Date

We acknowledge receipt of a copy of this document. The contractor has not yet commenced work on our project.

_____       5/30/19
Customer's Signature                             Date

_____       _____
Customer's Signature                             Date

Exhibit 3

**SERVPRO**          **Customer Equipment Responsibility Form**

Customer Name:   York Enterprises (Jeff Sharpe) -*jobsite contact*   Date of Loss:   5/30/19

Loss Address:   521 N Yakima Ave

City:   Tacoma                          State:   WA        Zip:   98403

Insurance / Client:   *Mutual of Enumclaw*   Claim Number (*if available*):   50000115713

| | | |
|---|---|---|
| Conventional Dehumidifiers | LGR Dehumidifiers | Desiccant Dehumidifiers |
| Air Movers | Specialty Drying Equipment (*list*): | |
| Power Distribution Centers | Odor Control Devices (*list*): | |
| Additional Equipment On-Site (*list*): | | |

### *Customer has been informed of the following requirements regarding equipment placed on the job site.*

1. The equipment should be left operating at all times. Do not move equipment unless you contact the SERVPRO® Franchise identified below regarding handling procedures. Turning equipment off will increase time required to dry structure and contents and may cause damage.

2. A water-damaged dwelling should maintain a temperature setting that promotes ideal drying conditions. Leaving windows or doors open during dehumidification or setting air conditioning too low may increase drying time and damage structure and/or contents.

3. Should customer have any problems with the equipment, shut it off immediately and call our office at 253-896-3000          as soon as possible.

4. Customer is responsible for damage to, and/or loss of, this equipment while it is in customer's care and custody, including but not limited to loss caused by theft, vandalism or disappearance.

5. It is the customer's responsibility to allow personnel access to customer's location to check on and pick up the equipment.

6. The above equipment may be picked up between the hours of  8:00  a.m  and  4:30  p.m. Monday through Friday excluding holidays.

7. The equipment will be connected to the electrical system in customer's dwelling/structure. Customer warrants the integrity and safety of the electrical system in the dwelling/structure. It shall be the customer's responsibility to have the electrical system inspected and serviced by a qualified electrician if necessary.

8. The customer agrees to hold the SERVPRO® Franchise below, its Franchisor and their respective officers, directors, employees, agents and affiliates harmless and indemnify it from any and all claims, including costs, expenses and attorney's fees, resulting from the improper use of the equipment by the customer and/or any defects in the electrical system or plumbing system in customer's dwelling/structure.

Customer,  York Enterprises (Jeff Sharpe) ← *Job site contact*, and Provider (SERVPRO of  Tacoma
acknowledge receipt of the above documented equipment in good working order.

Customer's Signature:   *[signature]*   Date:  5/30/19

Provider's Signature:   *[signature]*   Date:  5/30/19

©SERVPRO® INTELLECTUAL PROPERTY, Inc.          ALL RIGHTS RESERVED    FE-051707 1.0          28509   11/10

*Each SERVPRO® Franchise is Independently Owned and Operated*

Exhibit 3

**SERVPRO®**    **Authorization to Perform Services and Direction of Payment**

Customer Name: York Enterprises (Jeff Sharpe)    Date of Loss: 5/30/19

Loss Address: 521 N Yakima Ave

City: Tacoma    State: WA    Zip: 98403

Insurance Company: *Mutual of Enumclaw*    Claim Number (*if available*): 5000011 5713

The undersigned Customer, being the building owner, owner's representative, or resident, authorizes the Provider identified below to perform any and all necessary cleaning and/or restoration services on Customer's property located at the property address above, ~~and with respect to items that need to be cleaned at a remote location to remove and clean such items as necessary.~~ *Nothing to be removed from site. SM*

Customer authorizes *Mutual of Enumclaw* Insurance Company, herein referred to as "Insurance Company," to pay Provider solely and directly for that portion of the work covered by Customer's insurance policy.

If, for any reason, Customer receives a check from Insurance Company made payable to Customer, Customer agrees to pay Provider immediately upon receipt of the check. In order to expedite payment to Provider, Customer hereby appoints Provider as attorney-in-fact, authorizing Provider to endorse Customer's name on Insurance Company checks or drafts, and to deposit Insurance Company checks or drafts for Provider services.

Customer agrees to pay Customer's deductible in the amount of $ _____ that applies to this claim. If any amounts owing to Provider for Provider services are not covered by insurance, Customer agrees to pay those amounts to Provider within fifteen (15) days of Customer's receipt of invoice. It is fully understood that Customer and its agents, successors, assigns and heirs are personally responsible for any and all deductibles and any costs not covered by insurance. Interest and finance charges will be charged at the maximum allowable by law, or at 1.5% per month, whichever is less, on accounts over thirty (30) days past due. Time is of the essence.

Customer agrees that Provider is working for the Customer and not Customer's insurance company or any agent/adjuster.

Property Owned By: *Maxine McCallum*

Remarks: _____

**I HAVE READ THIS AUTHORIZATION TO PERFORM SERVICES AND DIRECTION OF PAYMENT, INCLUDING THE TERMS AND CONDITIONS OF SERVICE ON THE REVERSE SIDE HEREOF, AND AGREE TO SAME.**

Customer Reviewed *Customer Information Form*: ☒Y O N

Provider's Signature: _____

Customer's Signature: *Stacy McCracken for York*    Franchise Legal Name: Mitigation Masters

Printed Name: *Stacy McCracken*    d/b/a SERVPRO® of: Tacoma

Date: 5/30/19    Date: 5/30/19

Customer's Email Address: *Stacy@yorkenterprises.com*

White: SERVPRO®    Yellow: Claims Professional    Pink: Customer

©SERVPRO® INTELLECTUAL PROPERTY, Inc.    ALL RIGHTS RESERVED   FE-051707 1.0    28000  08/17

*Each SERVPRO® Franchise is Independently Owned and Operated.*

Exhibit 3

## Authorization to Perform Services and Direction of Payment

### Terms and Conditions of Service

#### R E A D   C A R E F U L L Y

**Note:  This Contract includes a limitation of liability and limitation of remedies.**

1.  SERVPRO® is one of the largest nationwide Cleaning and Restoration Franchise Systems in the United States. The SERVPRO® Franchise owner identified on the front of this Contract (the "Provider") is an independent contractor who agrees to perform the services identified on the front of this Contract (the "Services"). Client agrees to purchase, receive, and pay for the Services pursuant to the terms and conditions of this Contract. Servpro Industries, Inc., the Franchisor, is not a party to any agreement with Client, is not a guarantor of the Provider's Services, and is not subject to liability arising out of such Services.

2.  Provider's performance of the Services is limited by, among other things, the pre-existing conditions and characteristics of the premises, material, fabrics, furniture, and/or other items. PROVIDER EXPRESSLY DISCLAIMS ANY RESPONSIBILITY OR LIABILITY FOR ANY PRE-EXISTING CONDITIONS. Client shall retain responsibility and shall be liable for all effects of and costs necessary to correct such conditions, including, by way of example and not limitation, the conditions identified below:

    (a)  Provider may, in its sole discretion, pre-test materials for removability of spots or stains; dye or color fastness; shrinkage; fading; adhesive breakdown; or other problems. It is not always possible to determine these conditions in advance. PROVIDER DOES NOT GUARANTEE SPOT OR STAIN REMOVAL AND COLOR FASTNESS OR PREVENTION OF SHRINKAGE, FADING, OR ADHESIVE BREAKDOWN.

    (b)  Provider DOES NOT GUARANTEE that wall and ceiling cleaning will restore the original color to painted surfaces.

    (c)  Not all fabrics are conducive to cleaning. Provider shall use reasonable efforts to advise Client of any adverse effects which may be reasonably foreseen due to the nature of the fabric or material involved. PROVIDER DOES NOT GUARANTEE THAT SUCH MATERIALS CAN BE CLEANED OR THAT THERE WILL BE NO ADVERSE EFFECTS FROM ANY ATTEMPT TO CLEAN SUCH FABRICS.

    (d)  A variety of materials are used in the manufacturing, upholstery and/or installation process. These materials include backing, lining, tacks, or other unknown substances that may cause discoloration or other adverse effects to the face material. Client acknowledges that it is impossible to determine when such adverse effects may occur and PROVIDER DOES NOT GUARANTEE AGAINST SUCH ADVERSE EFFECTS.

    (e)  Client acknowledges and agrees that mold is commonly found throughout the environment and that it is impossible to eradicate mold. PROVIDER DOES NOT GUARANTEE THE REMOVAL OR ERADICATION OF MOLD.

3.  PROVIDER SPECIFICALLY DISCLAIMS ANY AND ALL OTHER WARRANTIES AND ALL IMPLIED WARRANTIES (EITHER IN FACT OR BY OPERATION OF LAW) INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR ANY IMPLIED WARRANTY ARISING OUT OF A COURSE OF DEALING, CUSTOM OR USAGE OF TRADE. THIS CONTRACT PROVIDES FOR THE PROVISION OF SERVICES AND DOES NOT PROVIDE FOR A SALE OF GOODS.

4.  <u>Limitation of Liability</u>: IN NO EVENT SHALL PROVIDER, ITS OWNERS, ANY OFFICERS, DIRECTORS, EMPLOYEES, OR AGENTS, FRANCHISOR, OR AFFILIATES BE RESPONSIBLE FOR INDIRECT, SPECIAL, NOMINAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL LOSSES OR DAMAGES, OR FOR ANY PENALTIES, REGARDLESS OF THE LEGAL OR EQUITABLE THEORY ASSERTED, INCLUDING CONTRACT, NEGLIGENCE, WARRANTY, STRICT LIABILITY, STATUTE OR OTHERWISE, EVEN IF IT HAD BEEN AWARE OF THE POSSIBILITY OF SUCH DAMAGES OR THEY ARE FORESEEABLE; OR FOR CLAIMS BY A THIRD PARTY. THE MAXIMUM AGGREGATE LIABILITY SHALL NOT EXCEED THREE TIMES THE AMOUNT PAID BY CUSTOMER FOR THE SERVICES OR ACTUAL PROVEN DAMAGES, WHICHEVER IS LESS. IT IS EXPRESSLY AGREED THAT CUSTOMER'S REMEDY EXPRESSED HEREIN IS CUSTOMER'S EXCLUSIVE REMEDY. THE LIMITATIONS SET FORTH HEREIN SHALL APPLY EVEN IF ANY OTHER REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE. Some states/countries do not allow the exclusion or limitation of incidental or consequential damages, so the above may not apply to you.

5.  Should Provider bring legal action to collect monies due under the Contract or should the matter be turned over for collection, Provider shall be entitled, to the fullest extent permitted under law, to reasonable legal fees and costs of any such collection attempt, in addition to any other amounts owed by Client. This attorney fee provision shall not be effective or enforceable in jurisdictions where attorney fee provisions are made reciprocal or invalid by operation of law. Consent is hereby given for filing of mechanic's liens by Provider for the work described in this contract on the property on which the work is performed if Provider is not paid.

6.  Any labor, materials or other work beyond that identified in this Contract shall require a written amendment to this Contract and will result in additional charges.

7.  Any claim by Client for faulty performance, for nonperformance or breach under this Contract for damages shall be made in writing to Provider within sixty (60) days after completion of services. Failure to make such a written claim for any matter which could have been corrected by Provider shall be deemed a waiver by Client. **NO ACTION, REGARDLESS OF FORM, RELATING TO THE SUBJECT MATTER** OF THIS CONTRACT MAY BE BROUGHT MORE THAN ONE (1) YEAR AFTER THE CLAIMING PARTY KNEW OR SHOULD HAVE KNOWN OF THE CAUSE OF ACTION.

8.  A failure of either party to exercise any right provided for herein shall not be deemed to be a waiver of any right hereunder.

9.  CLIENT AND PROVIDER EACH WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL CLAIMS OR CAUSES OF ACTION (INCLUDING COUNTERCLAIMS) RELATED TO OR ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS CONTRACT AND AGREE THAT ANY CLAIM OR CAUSE OF ACTION WILL BE TRIED BY A COURT TRIAL WITHOUT A JURY.

10.  If any provision of this Contract is found to be ineffective, unenforceable or illegal for any reason under present or future laws, such provision shall be fully severable, and this Contract shall be construed and enforced as if such provision never comprised a part of this Contract. The remaining provisions of this Contract shall remain in full force and effect and shall not be affected by the ineffective, unenforceable or illegal provision or by its severance from this Contract.

11.  No modification, termination, or attempted waiver of this Contract shall be valid unless in writing and signed by the party against whom the same is sought to be enforced.

**SERVPRO® Franchisees are always looking for motivated employees.**
**SERVPRO's individually owned and operated franchises offer a variety of positions including crew chief,**
**production technician, marketing representative, administrative assistant and many more.**

**SERVPRO®**                    **Customer Information Form – Water Damage**

1. **A NATIONWIDE SERVICE PROVIDER.** SERVPRO® is a Franchise system with over 1,500 independently owned and operated locations nationwide. Servpro Industries, Inc. the Franchisor may be reached at 1-800-SERVPRO.

2. **WORK AUTHORIZATION.** In order to start our mitigation and restoration service, you must sign the *Authorization to Perform Services* form. This allows us to take action immediately. We do not know your insurance coverage; therefore, it is impossible for us to know exactly what your insurance will cover. It is important to understand _you are financially responsible for our services_. Your deductible is payable before we start work. If for any reason insurance coverage cannot be verified at the time of our emergency service, an additional deposit may be required.

Date Damage Occurred: _5/30/19_
Insurance / Client: _Mutual of Enumclaw_
Policy #: _Claim # 5500000115913_
Deductible Amount: _____

3. **REFERENCES.** The Franchisee would be pleased to provide references upon request.

4. **HOW WE PROCEED.** The Franchisee will attempt to "preserve and protect" your structure and contents. The following steps may be completed in the emergency service, as determined to be applicable by the Franchisee.

- Survey the Extent of Damage and Inspect the Premises. Our initial inspection of the premises is designed to identify how much damage has occurred and plan the necessary emergency work. The inspection is also done for safety reasons. We check the affected area for bad flooring, ceiling damage, visible electrical hazards, contents damage, wall and baseboard damage, sewage water, visible mold, etc.

Are you aware of any potential safety hazards in the structure?    O Y O N

- Identify Source / Type of Water: Contaminated water sources like sewage, etc. require specialized restoration processes. In addition, the source of water should be completely stopped prior to starting any work other than the removal process.
Source of water intrusion: _plumbing line_
Has the source of water been stopped?    ☒Y O N

- Identify Visible Mold Growth: It is important for us to know whether visible mold growth is present. While molds may be found in small amounts almost anywhere, larger growths of mold may create health concerns, depending on the reaction of occupants to mold.

Have you seen signs of mold growing anywhere in the structure or its contents?    O Y ☒ N
Seen mold growth at any time in the past?    O Y ☒ N
Noticed any odors or musty smells?    O Y ☒ N

- Specialized procedures are required for materials like mold, lead paint, asbestos, Chinese drywall, etc. If we notice a significant presence of these types of materials, or believe there is a likelihood that such materials exist in the structure, we will notify the involved parties so they may determine an appropriate course of action.

Are you aware of any materials in the structure which might require specialized cleaning procedures (mold, lead paint, asbestos, Chinese drywall, etc.)?    O Y ☒ N

- Measure Temperature/Humidity for Drying Analysis: The process of drying will use equipment to remove moisture from the structure and contents of your home or place of business. This controlled reduction of the relative humidity level helps reduce property damage and slow mold growth.

- Emergency Water Extraction: Our next step is to remove as much water as possible from the affected area. This will be completed with our specialized extraction equipment.

- Furniture Moved and Blocked: This is done to protect carpet and furnishings in the affected area.

- Floor Service: We will check to see what type of floors you have. Carpet will be lifted to inspect flooring. As much water as possible will be removed.

- Carpet Pad: Pad acts like a sponge and holds water. If the pad is exposed to excess water, it may be necessary to remove the pad to protect the subfloor and speed the drying process.

- Carpet: Carpet will be checked for restorability, delamination, visible mold and mildew, etc. In some water damage situations, the carpets may need to be removed. This can include door removal, cutting seams and metal threshold removal.

- Treatments: Our process may include the application of EPA-registered disinfectants.

- Equipment: Drying equipment will be used to dry your property. The purpose of the equipment is to remove moisture and bring the relative humidity level back to normal. It is important the equipment be kept running, unless a safety hazard arises. Excessive moisture can still be present even when all visible surfaces seem dry, which may lead to mold growth or other damage. We will monitor moisture in wet materials.

- Disposal: Any refuse items such as carpet pad will be removed and disposed of properly.

5. **WHAT IS RESTORABLE.** Determining exactly what can be saved until everything is dry is usually impossible. We will set a follow-up date so we can monitor the drying process. In addition, the restoration process will be scheduled when the drying is complete. This can include floor preparation, tack strip replacement, carpet and pad installation, seaming, carpet cleaning and restoring, and furniture and contents cleaning. A scope of services will be provided.

6. **PRE-EXISTING OR PRELOSS CONDITIONS.** During the course of cleaning, we will likely remove day-to-day soiling, which existed prior to your loss. We are happy to do so. If, however, the removal of pre-existing soil requires significant extra effort, our crews will be instructed to move on to the next item. Pre-existing damage, including visible mold growth, will also be noted.

Has the structure sustained leaks or water intrusions in the past?    O Y ☒ N

7. **PERSONAL ITEMS.** In the course of our survey and cleaning, we will sometimes be required to open doors, cupboards, etc to qualify and/or restore the damage. If you prefer to remove personal items and personal or financial information from these areas before we start, please let us know.

- Guns and Ammunition: Our crews are instructed NEVER to touch guns or ammunition. For this reason we request you remove any such items from the areas we are cleaning.

- Jewelry, Valuables and Heirlooms: Please remove any valuable items from the areas we are cleaning before the job is started. We are not responsible for those items. List any special heirlooms or collectibles that should be given special or extra delicate treatment due to their value.

Will you be removing any personal items, guns, ammunition, jewelry, valuables or heirlooms prior to the Franchisee beginning work?    O Y ☒ N
List: _____

8. **OVERLOOKED ITEMS.** Although our supervisors inspect all work, you should accompany the supervisor on the final walk-through and bring any overlooked items or concerns to the supervisor's attention.

9. **INSURANCE ADJUSTERS OR AGENTS.** We are neither insurance adjusters nor agents. We cannot authorize anything to be replaced, repaired or painted. Our job is to preserve and protect, stop further damage from occurring and restore damaged items to their prior condition when possible.

10. **EMERGENCY CHARGES.** The exact price of restoring your property following water damage is virtually impossible to determine on our first visit. A verbal briefing will be provided to you or your insurance adjuster. The scope of work can change due to unforeseen circumstances. The final bill will be forwarded to you and/or your insurance carrier upon completion.

11. **HEALTH AND SAFETY.** Maintaining your personal health and safety is of great concern to us. All occupants and pets should stay away from the work areas to protect their health and safety during the work process. Material Safety Data Sheets for our products are available upon request.
Exposure to certain molds may cause health problems. If you have any concerns, you should consult a physician.
If you desire additional information, please request the SERVPRO Mold brochure, and contact your local or state health department.

Has anyone in the structure experienced reactions to the water intrusion?    O Y ☒ N
Do you have any health concerns about the water intrusion?    O Y ☒ N
Would you like copies of the MSDS?    ☒ Y O N

12. **APPROXIMATE COMPLETION.** The actual time required to complete the restoration process is difficult to estimate. We estimate approximately _____ days.

I HAVE READ AND UNDERSTAND THE ABOVE STATEMENTS AND INFORMATION CONTAINED HEREIN. MY ANSWERS TO THE ABOVE QUESTIONS ARE ACCURATE AND COMPLETE.

Customer Name: _York Enterprises_
Customer Signature: _Stewart Eraler Jr York_
Provider's Signature: _____
Date: _5/30/18_
Franchise Legal Name: _Mitigation Masters_
d/b/a SERVPRO of _Tacoma_

©SERVPRO® INTELLECTUAL PROPERTY, Inc.          ALL RIGHTS RESERVED     FE-051707 1.0                    28501   01/11

*Each SERVPRO® Franchise is Independently Owned and Operated.*

Exhibit 3

# EXHIBIT B

Exhibit 3



York Enterprises - Tacoma, WA

# Summary of Charges as of 4/22/2019



Project Location:
York Enterprises
521 North Yakima Rd
Tacoma, WA 98403

Customer Contact:
Stacy McCracken
253-752-3189
stacy@yorkenterprises.com

Produced By:
SERVPRO of Tacoma
PO Box 1173
Tacoma, WA 98401
253-896-3000
jason@servprooftacoma.com

Project Manager:
Jason McColm
253-896-3001

Exhibit 3

## Schedule A

| Week Beginning | Hours Worked | | | Labor Charges | | |
|---|---|---|---|---|---|---|
| | Regular | Overtime | Total | Regular | Overtime | Total |
| 5/26/2019 | 56.09 | 0.00 | 56.09 | $2,843.19 | $0.00 | $2,843.19 |
| 6/2/2019 | 125.91 | 0.00 | 125.91 | $6,315.31 | 1868.25 | $8,183.56 |
| 6/9/2019 | 88.49 | 0.00 | 88.49 | $4,837.24 | 0.00 | $4,837.24 |
| 6/16/2019 | 63.13 | 0.00 | 63.13 | $2,588.33 | 0.00 | $2,588.33 |
| 6/23/2019 | 6.22 | 0.00 | 6.22 | $352.52 | 0.00 | $352.52 |
| 6/30/2019 | 2.53 | 0.00 | 2.53 | 297.73 | 0.00 | $297.73 |
| | 5.06 | 0.00 | 5.06 | 595.46 | $0.00 | 595.46 |
| Totals: | 347.43 | 0.00 | 347.43 | $17,829.78 | $1,868.25 | $19,698.03 |

## Schedule B - Consumable Charges Summary

| Week Beginning | Total Charges |
|---|---|
| Total: | $8,865.52 |

## Schedule C - Equipment Charges Summary

| Week Beginning | Total Charges |
|---|---|
| 4/22/2019 | $5,390.00 |
| 4/29/2019 | $32,025.00 |
| | |
| Total: | $64,595.00 |

## Schedule D - Sub-contract Charges

| | Total Charges |
|---|---|
| Total | $0.00 |

## Schedule E - Miscellaneous Charges

| Miscellaneous Type | Misc. Cost | Overhead and Profit | Total Charges |
|---|---|---|---|
| Fuel | $559.03 | $111.81 | $670.84 |
| Meals | $0.00 | $0.00 | $0.00 |
| Other | $479.52 | $95.90 | $575.42 |
| Total: | $1,038.55 | $207.71 | $1,246.26 |

| Subtotal: | $94,404.81 |
|---|---|
| *Tax 10.2%:* | $9,629.29 |
| Total Charges: | $104,034.10 |

Exhibit 3

## Schedule A - Labor Charges
### Labor Charges Summary - Begining 5/26/2019 - Ending 6/1/2019

| Worker | | | Hours Worked | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 5/26 Sun | 5/27 Mon | 5/28 Tues | 5/29 Wed | 5/30 Thurs | 5/31 Fri | 6/1 Sat | Reg | OT | Total | Regular | Overtime | Total |
| McColm, Jason | PC | $ 138.00 | 0 | 0 | 0 | 0 | 4 | 1 | 0 | 5 | 0 | 5 | $690.00 | $0.00 | $690.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 0 | 0 | 0 | 0 | 7.98 | 8.94 | 2.62 | 19.54 | 0 | 19.54 | $801.14 | $0.00 | $801.14 |
| LiPuma, Joshua | GL | $ 41.00 | 0 | 0 | 0 | 0 | 7.82 | 5.61 | 0 | 13.43 | 0 | 13.43 | $550.63 | $0.00 | $550.63 |
| Bratton, Roscoe | GL | $ 41.00 | 0 | 0 | 0 | 0 | 5.57 | 3.42 | 0 | 8.99 | 0 | 8.99 | $368.59 | $0.00 | $368.59 |
| Shaw, Brayden | GL | $ 41.00 | 0 | 0 | 0 | 0 | 0 | 7.63 | 0 | 7.63 | 0 | 7.63 | $312.83 | $0.00 | $312.83 |
| Shaw, Lloyd | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 0 | 0 | 0 | 0 | 1.5 | 0 | 1.5 | 0 | 1.5 | $120.00 | $0.00 | $120.00 |
| **Weeks Labor Totals:** | | | 0.00 | 0.00 | 0.00 | 0.00 | 25.37 | 28.10 | 2.62 | 56.09 | 0.00 | 56.09 | 2843.19 | 0.00 | 2843.19 |

### Labor Charges Summary - Week Beginning 6/2/2019 - Ending 6/8/2019

| Worker | | | Hours Worked | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 6/2 Sun | 6/3 Mon | 6/4 Tues | 6/5 Wed | 6/6 Thurs | 6/7 Fri | 6/8 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0.5 | 0 | 0 | 0 | 0 | 0 | 0.5 | 0 | 0.5 | $66.50 | $0.00 | $66.50 |
| McColm, Jason | PC | $ 138.00 | 0 | 0.5 | 0 | 0.5 | 0 | 8 | 0 | 9 | 0 | 9 | $1,242.00 | $1,656.00 | $2,898.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 4.1 | 4.37 | 7.74 | 7.45 | 6.58 | 0.83 | 0 | 31.07 | 0 | 31.07 | $1,273.87 | $51.05 | $1,324.92 |
| LiPuma, Joshua | GL | $ 41.00 | 0 | 3.28 | 6.03 | 0 | 7.92 | 0 | 0 | 17.23 | 0 | 17.23 | $706.43 | $0.00 | $706.43 |
| Bratton, Roscoe | GL | $ 41.00 | 0 | 0 | 2.4 | 3.63 | 0.82 | 0 | 0 | 6.85 | 0 | 6.85 | $280.85 | $0.00 | $280.85 |
| Wells, Leonard | GL | $ 41.00 | 0 | 8.52 | 8.23 | 8.08 | 7 | 0 | 0 | 31.83 | 0 | 31.83 | $1,305.03 | $0.00 | $1,305.03 |
| Shaw, Brayden | GL | $ 41.00 | 0 | 5.47 | 7.08 | 4.39 | 5.82 | 0.67 | 0 | 23.43 | 0 | 23.43 | $960.63 | $41.21 | $1,001.84 |
| Shaw, Lloyd | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 2.5 | 1 | 1.5 | 0 | 1 | 0 | 6 | 0 | 6 | $480.00 | $120.00 | $600.00 |
| **Weeks Labor Totals:** | | | 4.10 | 25.14 | 32.48 | 25.55 | 28.14 | 10.50 | 0.00 | 125.91 | 0.00 | 125.91 | 6315.31 | 1868.25 | 8183.56 |

Exhibit 3

## Schedule A - Labor Charges

### Labor Charges Summary - Week Begining 6/9/2019 - Ending 6/15/2019

| Worker | | | Hours Worked | | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 6/9 Sun | 6/10 Mon | 6/11 Tues | 6/12 Wed | 6/13 Thurs | 6/14 Fri | 6/15 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| McColm, Jason | PC | $ 138.00 | 0 | 0 | 1 | 0 | 2 | 6 | 0 | 9 | 0 | 9 | $1,242.00 | $0.00 | $1,242.00 |
| Blakeway, Nicholas | PS | $ 58.00 | 0 | 3.28 | 3.97 | 2.2 | 0 | 0 | 0 | 9.45 | 0 | 9.45 | $548.10 | $0.00 | $548.10 |
| Blackston, Latonya | GL | $ 41.00 | 0 | 0 | 0 | 2.23 | 0 | 0 | 0 | 2.23 | 0 | 2.23 | $91.43 | $0.00 | $91.43 |
| Wells, Leonard | GL | $ 41.00 | 0.8 | 4.16 | 0 | 0 | 0 | 0 | 0 | 4.96 | 0 | 4.96 | $203.36 | $0.00 | $203.36 |
| Shaw, Brayden | GL | $ 41.00 | 0 | 4.63 | 0 | 0 | 0 | 5.36 | 0 | 9.99 | 0 | 9.99 | $409.59 | $0.00 | $409.59 |
| Espinoza, Iris | GL | $ 41.00 | 0 | 3.78 | 7.77 | 0 | 0 | 5.77 | 0 | 17.32 | 0 | 17.32 | $710.12 | $0.00 | $710.12 |
| Hull, Maria | GL | $ 41.00 | 0 | 7.25 | 7.73 | 0 | 0 | 0 | 0 | 14.98 | 0 | 14.98 | $614.18 | $0.00 | $614.18 |
| McKinnie, Etosha | GL | $ 41.00 | 0 | 0 | 0 | 2.35 | 8 | 0 | 0 | 10.35 | 0 | 10.35 | $424.35 | $0.00 | $424.35 |
| Johnson, Andrew | GL | $ 41.00 | 0 | 0 | 0 | 0 | 0 | 5.71 | 0 | 5.71 | 0 | 5.71 | $234.11 | $0.00 | $234.11 |
| Shaw, Lloyd | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 1 | 0 | 1 | 2.5 | 0 | 0 | 4.5 | 0 | 4.5 | $360.00 | $0.00 | $360.00 |
| Weeks Labor Totals: | | | 0.80 | 24.10 | 20.47 | 7.78 | 12.50 | 22.84 | 0.00 | 88.49 | 0.00 | 88.49 | 4837.24 | 0.00 | 4837.24 |

### Labor Charges Summary - Week Begining 6/16/2019 - Ending 6/22/2019

| Worker | | | Hours Worked | | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 6/16 Sun | 6/17 Mon | 6/18 Tues | 6/19 Wed | 6/20 Thurs | 6/21 Fri | 6/22 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| McColm, Jason | PC | $ 138.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 0 | 3.13 | 2.37 | 8.11 | 7.88 | 0 | 0 | 21.49 | 0 | 21.49 | $881.09 | $0.00 | $881.09 |
| Bratton, Roscoe | GL | $ 41.00 | 0 | 0 | 0 | 0 | 0 | 0.92 | 0 | 0.92 | 0 | 0.92 | $37.72 | $0.00 | $37.72 |
| Horne, Burgess | GL | $ 41.00 | 0 | 0 | 0 | 0 | 7.99 | 0 | 0 | 7.99 | 0 | 7.99 | $327.59 | $0.00 | $327.59 |
| Wells, Leonard | GL | $ 41.00 | 0 | 0.82 | 0 | 6.96 | 6.02 | 0 | 0 | 13.8 | 0 | 13.8 | $565.80 | $0.00 | $565.80 |
| Espinoza, Iris | GL | $ 41.00 | 0 | 0 | 0 | 4.02 | 7.5 | 0 | 0 | 11.52 | 0 | 11.52 | $472.32 | $0.00 | $472.32 |
| Hull, Maria | GL | $ 41.00 | 0 | 0 | 0 | 0 | 7.41 | 0 | 0 | 7.41 | 0 | 7.41 | $303.81 | $0.00 | $303.81 |
| Shaw, Lloyd | C/A | $ 80.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | GL | $ 41.00 | 0 | 1 | 1.5 | 0 | 1 | 0 | 0 | 3.5 | 0 | 3.5 | $143.50 | $0.00 | $143.50 |
| Weeks Labor Totals: | | | 0.00 | 4.95 | 3.87 | 19.09 | 37.80 | 0.92 | 0.00 | 66.63 | 0.00 | 66.63 | 2731.83 | 0.00 | 2731.83 |

Exhibit 3

## Schedule A - Labor Charges
### Labor Charges Summary - Week Beginning 6/23/2019 - Ending 6/29/2019

| Worker | | | Hours Worked | | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 6/23 Sun | 6/24 Mon | 6/25 Tues | 6/26 Wed | 6/27 Thurs | 6/28 Fri | 6/29 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| McColm, Jason | PC | $ 138.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 0 | 0 | 1.35 | 2.37 | 0 | 0 | 0 | 3.72 | 0 | 3.72 | $152.52 | $0.00 | $152.52 |
| Shaw, Lloyd | C/A | $ 80.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 1 | 1.5 | 0 | 0 | 0 | 0 | 2.5 | 0 | 2.5 | $200.00 | $0.00 | $200.00 |
| Weeks Labor Totals: | | | 0.00 | 1.00 | 2.85 | 2.37 | 0.00 | 0.00 | 0.00 | 6.22 | 0.00 | 6.22 | 352.52 | 0.00 | 352.52 |

### Labor Charges Summary - Week Beginning 6/30/2019 - Ending 7/6/2019

| Worker | | | Hours Worked | | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 6/30 Sun | 7/1 Mon | 7/2 Tue | 7/3 Wed | 7/4 Thu | 7/5 Fri | 7/6 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| McColm, Jason | PC | $ 138.00 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 | $276.00 | $0.00 | $276.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0.53 | 0.53 | 0 | 0.53 | $21.73 | $0.00 | $21.73 |
| Shaw, Lloyd | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Weeks Labor Totals: | | | 0.00 | 0.00 | 0.00 | 2.00 | 0.00 | 0.00 | 0.53 | 2.53 | 0.00 | 2.53 | 297.73 | 0.00 | 297.73 |

### Labor Charges Summary - Week Beginning 7/7/2019 - Ending 7/13/2019

| Worker | | | Hours Worked | | | | | | | | | | Labor Charges | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Type | Rate | 7/7 Sun | 7/8 Mon | 7/9 Tue | 7/10 Wed | 7/11 Thu | 7/12 Fri | 7/13 Sat | Reg | OT | Total | Regular | Overtime | Total |
| Wiskow, Jeff | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| McColm, Jason | PC | $ 138.00 | 0 | 1.5 | 0 | 0 | 0 | 0 | 0 | 1.5 | 0 | 1.5 | $207.00 | $0.00 | $207.00 |
| Blakeway, Nicholas | GL | $ 41.00 | 0 | 0 | 0.78 | 0 | 0 | 0 | 0 | 0.78 | 0 | 0.78 | $31.98 | $0.00 | $31.98 |
| Shaw, Lloyd | PE | $ 133.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $0.00 | $0.00 | $0.00 |
| Collins, Melissa | C/A | $ 80.00 | 0 | 1 | 0 | 5 | 0 | 0 | 0 | 6 | 0 | 6 | $480.00 | $0.00 | $480.00 |
| Weeks Labor Totals: | | | 0.00 | 2.50 | 0.78 | 5.00 | 0.00 | 0.00 | 0.00 | 8.28 | 0.00 | 8.28 | 718.98 | 0.00 | 718.98 |

| Totals | | | 4.90 | 57.69 | 60.45 | 61.79 | 103.81 | 62.36 | 3.15 | 354.15 | - | 354.15 | 18,096.80 | 1,868.25 | 19,965.05 |

Exhibit 3

## Schedule B - Consumables Charges Summary

| Item Description | UOM | Total for Job | Unit Price | Total Charges |
|---|---|---|---|---|
| BX - Large | EA | 9 | $5.00 | $45.00 |
| BX - Legal Size (1.2 cubic feet) | EA | 0 | $5.45 | $0.00 |
| BX - Medium | EA | 19 | $4.20 | $79.80 |
| BX - Small | EA | 23 | $3.80 | $87.40 |
| Cleaning Towel | DZ | 12 | $10.60 | $127.20 |
| Coil Cleaner | Aerosol/Can | 3 | $17.00 | $51.00 |
| Concrobian® Disinfectant | GALLON | 2 | $55.30 | $110.60 |
| Dusting Cloth - Masslin treated | 50/Bag | 1 | $53.30 | $53.30 |
| Eco Board Floor Protection 38" x 100' - ROLL | EA | 10 | $118.00 | $1180.00 |
| Filter - Activated Carbon 500 cfm Generic | EA | 2 | $19.40 | $38.80 |
| Filter - Air Scrubber 500 cfm - HEPA-Generic | EA | 2 | $171.42 | $342.84 |
| Filter - Air Scrubber 500 cfm - Prefilter | EA | 2 | $9.68 | $19.36 |
| Filter - Air Scrubber 500 cfm - Secondary Generic | EA | 2 | $16.26 | $32.52 |
| Filter - Wet/Dry Vacuum, non-HEPA | EA | 8 | $22.95 | $183.60 |
| Floor Protection 15" x 1,100' - ROLL | EA | 10 | $228.00 | $2280.00 |
| Glass Cleaner, Super Concentrate | GALLON | 1 | $71.92 | $71.92 |
| Gloves, Leather Safety/Work | DZ | 2 | $96.00 | $192.00 |
| Gloves, Nitrile/Latex | BX/100 | 4 | $25.12 | $100.48 |
| Hearing Protection | 20/BX | 2 | $24.50 | $49.00 |
| Lay Flat (ROLL - 250' x 14") | EA | 2 | $120.00 | $240.00 |
| Lay Flat (ROLL - 500' x 33") | EA | 2 | $700.00 | $1400.00 |
| Microban Disinfectant | GALLON | 1 | $78.00 | $78.00 |
| Plastic Sheeting 6 mil - 20' x 100' ROLL | EA | 3 | $196.00 | $588.00 |
| PPE Package (**) | Day/Per Person | 2 | $35.00 | $70.00 |
| Respirator Cartridges - Organic | EA | 2 | $22.90 | $45.80 |
| Respirator N 95 Paper Respirator | BX/20 | 3 | $41.20 | $123.60 |
| Safety Glasses | EA | 10 | $4.50 | $45.00 |
| Shoe Covers | 150/CASE | 1 | $97.00 | $97.00 |
| Tape, Painter (Blue) 2" x 60yrds. | ROLL | 10 | $13.16 | $131.60 |
| Tape, Poly/BX - 2" x 109 yrds. | ROLL | 5 | $7.94 | $39.70 |
| Trash Bags, Contractor - 3 mil | BX 50 | 11 | $50.00 | $550.00 |
| Tyvek (Bio-Shield Coveralls) | CASE/25 | 2 | $206.00 | $412.00 |
| **Week's Equipment Totals:** | | | | **$8865.52** |

Exhibit 3

## Schedule C
## Equipment Charges Summary - Begining 5/26/2019 - Ending 6/1/2019

| Item Description | UOM | 26-May | 27-May | 28-May | 29-May | 30-May | 31-May | 1-Jun | Total for Week | Unit Price | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Sun | Mon | Tue | Wed | Thur | Fri | Sat | | | |
| Air Mover, Carpet | Day | 0 | 0 | 0 | 0 | 9 | 12 | 12 | 33 | $30.00 | $990.00 |
| Dehumidifier - Large Commercial >25 Gallon | Day | 0 | 0 | 0 | 0 | 0 | 3 | 8 | 11 | $145.00 | $1595.00 |
| Dry Force Injectidry (Wood Floor Extraction) | Day | 0 | 0 | 0 | 0 | 3 | 3 | 3 | 9 | $180.00 | $1620.00 |
| Firebird - thermal air mover | Day | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 3 | $180.00 | $540.00 |
| Power Distribution, 100-200 Amp | Day | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | $120.00 | $120.00 |
| Vehicle - Box Truck | Day | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 3 | $175.00 | $525.00 |
| **Week's Equipment Totals:** | | 0 | 0 | 0 | 0 | 14 | 20 | 26 | 60 | | $5,390.00 |

## Equipment Charges Summary - Begining 6/2/19 - Ending 6/8/19

| Item Description | UOM | 2-Jun | 3-Jun | 4-Jun | 5-Jun | 6-Jun | 7-Jun | 8-Jun | Total for Week | Unit Price | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Sun | Mon | Tue | Wed | Thur | Fri | Sat | | | |
| Air Mover, Carpet | Day | 13 | 14 | 5 | 7 | 7 | 1 | 1 | 48 | $30.00 | $1440.00 |
| Dehumidifier - Large Commercial >25 Gallon | Day | 8 | 8 | 10 | 7 | 8 | 8 | 5 | 54 | $145.00 | $7830.00 |
| Desiccant Door Kit - Total/one time charge | Day | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | $325.00 | $325.00 |
| Desiccant, 1,000 cfm | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $575.00 | $4025.00 |
| Dry Force Injectidry (Wood Floor Extraction) | Day | 8 | 11 | 8 | 9 | 10 | 6 | 6 | 58 | $180.00 | $10440.00 |
| Firebird - thermal air mover | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $180.00 | $1260.00 |
| Generator Cable, 5 Band | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $75.00 | $525.00 |
| Generator, 20k W | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $365.00 | $2555.00 |
| Power Distribution, 100-200 Amp | Day | 3 | 4 | 3 | 3 | 3 | 2 | 2 | 20 | $120.00 | $2400.00 |
| Vehicle - Box Truck | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $175.00 | $1225.00 |
| **Week's Equipment Totals:** | | 38 | 42 | 31 | 31 | 33 | 22 | 19 | 216 | | $32,025.00 |

## Equipment Charges Summary - Begining 6/9/19 - Ending 6/15/19

| Item Description | UOM | 9-Jun | 10-Jun | 11-Jun | 12-Jun | 13-Jun | 14-Jun | 15-Jun | Total for Week | Unit Price | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Sun | Mon | Tue | Wed | Thur | Fri | Sat | | | |
| Air Mover, Carpet | Day | 1 | 7 | 6 | 2 | 2 | 2 | 1 | 21 | $30.00 | $630.00 |
| Dehumidifier - Large Commercial >25 Gallon | Day | 5 | 5 | 6 | 7 | 6 | 6 | 6 | 41 | $145.00 | $5945.00 |
| Desiccant, 1,000 cfm | Day | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 5 | $575.00 | $2875.00 |
| Dry Force Injectidry (Wood Floor Extraction) | Day | 6 | 8 | 8 | 6 | 6 | 6 | 2 | 42 | $180.00 | $7560.00 |
| Firebird - thermal air mover | Day | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 5 | $180.00 | $900.00 |
| Generator Cable, 5 Band | Day | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 6 | $75.00 | $450.00 |
| Generator, 20k W | Day | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 6 | $365.00 | $2190.00 |
| Spider Box | Day | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 12 | $75.00 | $900.00 |
| Vehicle - Box Truck | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $175.00 | $1225.00 |
| **Week's Equipment Totals:** | | 19 | 27 | 27 | 22 | 21 | 19 | 10 | 145 | | $22,675.00 |

## Equipment Charges Summary - Begining 6/16/19 - Ending 6/22/19

| Item Description | UOM | 16-Jun | 17-Jun | 18-Jun | 19-Jun | 20-Jun | 21-Jun | 22-Jun | Total for Week | Unit Price | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Sun | Mon | Tue | Wed | Thur | Fri | Sat | | | |
| Air Mover, Carpet | Day | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 3 | $30.00 | $90.00 |
| Air Scrubber, 500 cfm | Day | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 2 | $75.00 | $150.00 |
| Dehumidifier - Large Commercial >25 Gallon | Day | 4 | 4 | 4 | 2 | 0 | 1 | 1 | 16 | $145.00 | $2320.00 |
| Dry Force Injectidry (Wood Floor Extraction) | Day | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 4 | $180.00 | $720.00 |
| Vehicle - Box Truck | Day | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 | $175.00 | $1225.00 |
| **Week's Equipment Totals:** | | 8 | 8 | 6 | 4 | 2 | 2 | 2 | 32 | | $4,505.00 |

| **Totals** | | 65 | 77 | 64 | 57 | 70 | 63 | 57 | 453 | | $64,595.00 |

Exhibit 3

## Schedule D - Sub-contract Charges
### Sub-contract Charges Details

| Service Category | Vendor Name | Invoice Date | Invoice Number | Invoice Amount | Overhead and Profit | Total Charges |
|---|---|---|---|---|---|---|
| | | | | | $0.00 | $0.00 |
| | | | | | $0.00 | $0.00 |
| | | | | | $0.00 | $0.00 |
| | | | | | $0.00 | $0.00 |
| | | | | | $0.00 | $0.00 |
| | | | | | $0.00 | $0.00 |
| | | | | | | |
| Invoice Sub-contract Total: | | | | $0.00 | $0.00 | $0.00 |

Exhibit 3

## Schedule E

### Fuel

| Vendor Name | Activity Date | Misc. Cost | Overhead and Profit | Total Charges |
|---|---|---|---|---|
| Safeway Fuel | 6/1/2019 | $61.49 | $12.30 | $73.79 |
| Safeway Fuel | 6/3/2019 | $66.50 | $13.30 | $79.80 |
| Safeway Fuel | 6/4/2019 | $61.65 | $12.33 | $73.98 |
| Safeway Fuel | 6/5/2019 | $67.38 | $13.48 | $80.86 |
| Safeway Fuel | 6/6/2019 | $67.00 | $13.40 | $80.40 |
| Shell Oil | 6/7/2019 | $66.68 | $13.34 | $80.02 |
| Shell Oil | 6/10/2019 | $68.23 | $13.65 | $81.88 |
| Shell Oil | 6/11/2019 | $65.26 | $13.05 | $78.31 |
| Chevron | 6/13/2019 | $34.84 | $6.97 | $41.81 |
| **Fuel Total:** | | **$559.03** | **$111.81** | **$670.84** |

### Meals

| Vendor Name | Activity Date | Misc. Cost | Overhead and Profit | Total Charges |
|---|---|---|---|---|
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| **Meals Total:** | | **$0.00** | **$0.00** | **$0.00** |

### Other

| Vendor Name | Activity Date | Misc. Cost | Overhead and Profit | Total Charges |
|---|---|---|---|---|
| Orion - asbestos testing | 6/4/2019 | $40.00 | $8.00 | $48.00 |
| Kleensweep | 6/17/2019 | $439.52 | $87.90 | $527.42 |
| | | | $0.00 | $0.00 |
| | | | | |
| | | | | |
| **Other Total:** | | **$479.52** | **$95.90** | **$575.42** |

Exhibit 3